UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JORGE V.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

Case No.: 3:25-cv-1008-BJW

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

[ECF No. 11]

Pursuant to Title 42, United States Code, Section 405(g) of the Social Security Act ("SSA"), Plaintiff Jorge Vazquez, Jr. filed a Complaint on April 23, 2025, to obtain judicial review of a final decision by the Commissioner of Social Security ("Defendant") denying his claim for supplemental security income disability benefits. The parties consented to magistrate judge jurisdiction on April 24, 2025. ECF No. 3; *See* 28 U.S.C. § 636(c). Having considered the record before the Court and the parties' arguments, the Court **AFFIRMS** the Commissioner's decision.

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court uses first names and last initials to refer to non-government parties.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed his original application for Supplemental Security Income ("SSI") on February 23, 2022[2], alleging disability beginning on January 1, 2008. ECF No. 6, Administrative Record ("AR") at 18.[3] On July 21, 2022, the claim was denied. AR at 18, 97-100. And on January 3, 2023, the claim was denied on reconsideration. AR at 18, 111-128. On April 6, 2023, Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ"). AR at 18, 148.

On March 14, 2024, the ALJ held an in-person hearing. AR at 81. The ALJ heard testimony from Plaintiff and a vocational expert ("VE"). AR at 80. On May 7, 2024, the ALJ issued his written decision, finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the SSA. AR at 15-31. On March 26, 2025, the Appeals Council denied Plaintiff's request for review, and the ALJ's finding that Plaintiff was not disabled became Defendant's final decision. AR at 1-7; 42 U.S.C. § 405(h). The complaint seeking review of that decision timely followed. ECF No. 1; 42 U.S.C. § 405(g).

## B. Relevant Facts

Plaintiff was born on February 4. 1974. AR at 190, 218. Plaintiff completed school through the twelfth grade and can communicate in English. AR at 209-210. Plaintiff completed autobody specialist paint and welding training in January 1994. AR at 210. Plaintiff worked as a furniture delivery driver from 1992 to 2000, a freight truck driver from 2000 to 2002, and a tow truck driver from 2002 to 2004. AR at 235. Plaintiff's employment as a furniture delivery driver, freight truck driver, and tow truck driver required standing, walking, bending, kneeling, crawling, reaching, pushing, pulling,

---

[2] There appears to be inconsistency in the record as to whether Plaintiff filed his Application for Supplemental Security Income on February 23, 2022, or on March 11, 2022. *Compare* AR at 18, *with* AR at 190 *and* ECF 11 at 2. Because the ALJ's decision refers to the February date, the Court refers to the February date.

[3] To avoid the need to identify each ECF filing that makes up the Administrative Record, the Court's citations refer to the sequential page numbers located in the bottom right corner of each page of the Administrative Record.

lifting up to 100 pounds, squatting, climbing, overhead work, and grasping. AR 236-239. Plaintiff has not worked in the past fifteen years. AR at 209. Plaintiff complains of a broken thoracic bone and a cracked lower lumbar. AR at 209.

**C. Summary of ALJ's Decision**

On May 7, 2024, the ALJ issued a written decision denying Plaintiff's claim for supplemental security income disability benefits, finding that Plaintiff was not disabled within the meaning of the SSA. AR at 15-31. Under the Social Security Act, "disability" broadly means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d). When an individual files a claim for disability insurance benefits based on a claimed disability, the Social Security Administration determines whether the individual is disabled by following a five-step sequential process. 20 C.F.R. § 404.1520. If, at any step, the ALJ finds that the claimant is not disabled, that decision will control and the evaluation will not proceed to the subsequent step. *See id.*

The first step asks whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). A finding that the claimant is engaged in such activity will result in a finding of not disabled. *Id.* The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February 23, 2022, Plaintiff's application date. AR at 20.

The second step requires consideration of the severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a "severe medically determinable physical or mental impairment, or a combination of impairments," that meets the duration requirements, they will not be considered disabled. *Id.* The ALJ found that plaintiff "has the following severe impairments: obesity, and degenerative disc disease of the cervical, thoracic, and lumbar spines, with spondylolisthesis, neural foraminal narrowing and mild central canal stenosis." AR at 20.

The ALJ concluded Plaintiff's impairments significantly limit Plaintiff's ability to perform basic work activities. *Id.*

The third step also requires consideration of the severity of impairments but asks whether they meet or equal certain listed impairments in Appendix 1 to the subpart of the relevant section of the Code of Federal Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If one of the claimant's impairments meets a listed impairment, the claimant *will* be found to be disabled. *Id.*

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR at 21. Specifically, the ALJ considered whether Plaintiff's impairments meet or medically equal the criteria of listings 1.15 (relevant to Disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (relevant lumbar spinal stenosis resulting in compromise of the cauda equina), 1.17 (relevant to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, and 1.18 (relevant to abnormality of a major joint(s) in any extremity). AR at 21; 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ noted that while there is no specific listing pertaining to obesity, he still considered Plaintiff's obesity diagnosis and treatment in making his step three determination. AR at 21.

The ALJ supported his step three conclusion by reasoning that Plaintiff's administrative record failed to indicate:

> a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

AR at 21. The ALJ emphasized that Plaintiff's administrative record "does not support the existence of any functional limitations and or diagnostic test results, which would suggest that the impairments meet or equal the criteria of any specific [Appendix listing]." *Id.*

The fourth step initially requires a determination of the claimant's "residual functional capacity" considering his or her impairments, then evaluates whether the claimant can still perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

The ALJ found that Plaintiff has the residual functioning capacity to perform light work, with the ability to lift, carry, and push and pull twenty pounds occasionally and ten pounds frequently, and stand and walk for six hours out of an eight-hour day. AR at 21. The ALJ noted that Plaintiff's broken thoracic bone, cracked lower lumbar, hernia, right hip operation, and knee operation are medically determinable impairments that could reasonably be expected to cause Plaintiff's alleged symptoms. AR at 22. However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ did not evaluate Plaintiff's past work experience since Plaintiff has no past relevant work history. 20 C.F.R 416.965.

In making his residual functional capacity determination, the ALJ reviewed Plaintiff's medical record, medical opinions, and prior administrative findings. AR 22-26. The ALJ noted that Plaintiff's physical and neurological examinations show normal gait. AR at 25. The medical record also demonstrated recommendations for conservative treatment for Plaintiff's back pain, neck pain, and other physical conditions. AR at 25. The ALJ noted that neurosurgeon Dr. Andrew Nguyen reviewed Plaintiff's MRI imagining and consulted with Plaintiff. AR at 26. Yet Dr. Nguyen "did not see any strong indication of any recommended surgery." *Id*. The ALJ also found that Plaintiff's "obesity caused or exacerbated his other Impairments." AR at 22.

The ALJ concluded that Dr. Charles Lee and Dr. A. Khan's prior administrative medical findings were persuasive where they were supported by, and consistent with, the

record. AR at 25. Both doctors assessed "a light exertional level, frequently balance, occasionally climb ramps, stairs, ladders, ropes, scaffolds, stoop, kneel, crouch, crawl, and avoid concentrated exposure to extreme cold, vibration, and hazards." AR at 24-25. The ALJ noted that both doctors had the opportunity to review Plaintiff's medical records, and their findings were consistent with one another. AR at 25.

The ALJ found Dr. Sial's May 17, 2022 medical assessment of Plaintiff only partially persuasive where it is supported by the record. *Id.* The ALJ noted that Dr. Sial did not have the opportunity to review the entire record. *Id.* The ALJ was not persuaded by Dr. Sial's conclusion that Plaintiff needs to periodically alternate between sitting and standing. *Id*. The ALJ was also unpersuaded by Dr. Sial's assessed upper extremity and manipulative limitations. *Id.* To support his conclusion, the ALJ pointed to Dr. Sial's own finding that Plaintiff "expressed full extension of the hands bilaterally while making fists and moving his fingers normally." *Id.*

The ALJ also found NP Quilalang's February 1, 2024 medical assessment of Plaintiff "unpersuasive where it is not supported by and consistent with the record." *Id.* The ALJ reasoned that NP Quilalang's opinion was a check list "without reference to any specific evidence to support the assessments given." *Id.* The ALJ further concluded that NP Quilalang's in-home supportive services form unpersuasive because it provided "no specific reference to tests, findings or any other evidence to support the opinion." *Id.* The ALJ noted that the in-home supportive services form "was made for the purposes of receiving in-home supportive services and not for social security purposes." AR at 25.

The fifth and final step requires again considering the claimants "residual functional capacity," along with his or her age, education, and work experience, to determine if the claimant could "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant could make an adjustment to other work, the ALJ will not find the claimant disabled. *Id.*

The ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful

adjustment to other work that exists in significant numbers in the national economy." AR at 27. Thus, the ALJ concluded that Plaintiff is *not disabled* under this framework. *Id.*

## II. ISSUES PRESENTED

Plaintiff raises one disputed issue for review by this Court. (ECF No. 11 at 2).

1) Did the ALJ properly evaluate the vocational impact of Plaintiff's upper extremity limitations?

## III. STANDARD OF REVIEW

A district court reviewing the Commissioner's decision "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (citation omitted and internal quotation marks omitted); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and internal quotation marks omitted).

This standard is "highly deferential." *Kitchen*, 82 F.4th at 738 (citation and internal quotation marks omitted). But the Court must evaluate the administrative record as a whole and must not affirm the Commissioner's decision by considering only isolated evidence. *See Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citation omitted). Still, if "the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Court also may not reverse an ALJ's decision because of a harmless error. *Id.* An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id.* at 1115 (collecting cases).

## IV. DISCUSSION

The ALJ's summary of the medical evidence and testimony of record is not in dispute. ECF No. 11 at 2. Rather, Plaintiff argues that the ALJ impermissibly discounted

Dr. Sial and NP Quilalang's findings that Plaintiff has upper extremity limitations. *Id.* at 3. Both medical sources physically examined Plaintiff, and both assessed that Plaintiff had upper extremity limitations. AR at 25, 299-300, 799. Plaintiff challenges the ALJ's findings that Dr. Charles Lee and Dr. A. Khan's medical assessments of Plaintiff are persuasive. ECF No. 11 at 2-5; *see* AR at 25. Neither Dr. Lee nor Dr. Khan found that Plaintiff had upper extremity limitations. AR at 24-25, 106, 124. Although both doctors reviewed Plaintiff's medical record, Plaintiff criticizes the doctors' assessments on the ground that neither doctor physically examined Plaintiff. AR at 25; ECF No. 11 at 5. Plaintiff contends that both reports wrongly assessed that Plaintiff lacks upper extremity limitations. ECF No. 11 at 2-5.

Plaintiff further argues that the ALJ erroneously reached his step five determination. *Id*. Plaintiff contests the ALJ's reliance on the VE's testimonial answers that failed to include Dr. Sial and NP Quilalang's findings. *Id.* at 4-5. Plaintiff argues that the VE's testimony lacking consideration of Plaintiff's upper extremity limitations has no evidentiary value. *Id.* at 3.

Defendant frames the issue before the Court as the ALJ not accepting that "the limitations that Plaintiff would have liked to see included[.]" *Id.* at 5. Instead, Defendant asserts that the ALJ permissibly discounted unpersuasive portions of Dr. Sial and NP Quilalang's medical assessments in making his step four residual functional capacity determination. *Id*. Defendant further contends that the ALJ's "hypothetical[s] were proper because they included those limitations for which there was record support and excluded incredible limitations." *Id.* at 9.

When presented with conflicting medical opinions, the ALJ must determine how much weight to afford each opinion. *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (citations omitted). Under earlier regulations, the opinion of a treating physician demanded "substantial weight." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "'[I]f the treating doctor's opinion [was] contradicted by another doctor,' the ALJ [could] discount the treating physician's opinion by giving 'specific and legitimate reasons' that

[were] supported by substantial evidence[.]" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Where the opinion was not contradicted by another doctor, "the ALJ [could] reject it only for 'clear and convincing' reasons supported by substantial evidence in the record." *Ford*, 950 F.3d at 1154 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

The previous regulations weighed the opinions of physicians in a three-tiered hierarchy. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). The highest tier consisted of treating physicians who evaluated and had an ongoing treatment relationship with the claimant. *Id.* The middle tier contained doctors who examined but did not have an ongoing relationship with the claimant. *Id.* The lowest tier was reserved for "'physicians who only review the record.'" *Woods*, 32 F.4th at 789 (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003)). Courts gave greater deference to treating and examining physicians' medical opinions due to their relationship with the Claimant. *Cross*, 89 F.4th at 1214 (citations omitted).

Changes in 2017 to the Social Security regulations eliminate the "hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those of treating sources." *Woods*, 32 F.4th at 788. The new regulations apply to Plaintiff.[4] While the extent of the doctor's relationship with the claimant remains relevant under the new regulations, the inherent weight of persuasiveness is removed. *See id.* at 791. Now, "'[t]he most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence'" whereas consistency is defined as "the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the

[4] The new regulations apply to plaintiffs who filed claims on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Plaintiff filed his claim on February 23, 2022. AR at 190.

claim." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (quoting *Woods*, 32 F.4th at 791-92); *see* 20 C.F.R. § 404.1520c(c). The new regulations require the ALJ to articulate how persuasive he finds all medical opinions and explain how he considered the supportability and consistency factors in reaching his conclusions. *Stiffler*, 102 F.4th at 1106 (citations omitted). Still, the ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Here, Plaintiff argues that the ALJ relied on medical opinions "from two doctors who *merely reviewed* the medical evidence of record." ECF No. 11 at 5 (emphasis added). However, physicians who only review the record, no longer occupy the lowest rung in the three-tiered physician opinion deferential hierarchy. *See Woods*, 32 F.4th at 788-92. Additionally, while the history of NP Quilalang's medical relationship with Plaintiff and Dr. Sial's physical examination of Plaintiff are relevant, the ALJ did not need to make specific findings regarding either medical source's relationship with Plaintiff. *See id.* at 792.

**A. The ALJ's rejection of Dr. Sial's upper extremity limitation finding is supported by substantial evidence.**

Plaintiff argues that the ALJ incorrectly found Dr. Sial's medical assessment unpersuasive. ECF No. 11 at 3-4. Dr. Sial conducted his medical examination of Plaintiff on May 17, 2022. AR at 295. Dr. Sial did not review Plaintiff's medical records prior to the examination. *Id*. Nor did Dr. Sial's opinion consider the almost two years of medical records between his examination and the ALJ's hearing. *Compare* AR at 294, *with* AR at 81-82

The ALJ found that Dr. Sial's upper extremity limitation assessment of Plaintiff was inconsistent with, and unsupported by, the record. AR at 25. The ALJ explained that the record does not support a finding that Plaintiff has manipulative limitations. *Id*. The ALJ highlighted the inconsistency of Dr. Sial's upper extremity limitation finding by pointing to Dr. Sial's own statement that Plaintiff "expressed full extension of the hands

bilaterally while making fists and moving his fingers normally." AR at 25 (citing AR at 297-98); *See Stiffler*, 102 F.4th at 1106. Plaintiff does not point to any evidence in the medical record that supports Dr. Sial's manipulative limitation assessment. ECF No. 11 at 2-5. Nor does Plaintiff identify medical records that nullify the inconsistencies in Dr. Sial's assessment. *Id.*

Notably, the contrary opinions of non-examining medical experts do not by themselves constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citation omitted). However, non-examining medical expert opinions may constitute substantial evidence when they are consistent with other independent evidence in the record. *Id*. The ALJ found that Dr. Khan and Dr. Lee's prior administrative findings were consistent both with each other and with Dr. Sial's finding that Plaintiff expressed full extension of his hands and normal articulation of his fingers. AR at 24-25. Accordingly, the Court finds the ALJ's decision supported by substantial evidence here.

**B. The ALJ did not improperly reject NP Quilalang's medical assessment.**

Plaintiff contends that the ALJ's rejection of NP Quilalang's medical opinion is "even more specious" than the rejection of Dr. Sial's medical opinion. ECF No. 11 at 4. The ALJ found NP Quilalang's opinion "unpersuasive where it is not supported by and consistent with the record, including conservative treatment for [Plaintiff's] back and neck pain and physical conditions." AR at 25. Plaintiff contests the ALJ's finding that Plaintiff is a recipient of "conservative treatment." ECF No. 11 at 4. Plaintiff points to Dr. Joseph Osorio's conclusion that Plaintiff is not a surgical candidate for a thirteen-level spinal fusion due to morbid obesity as evidence of non-conservative treatment ECF No. 11 at 4 (citing AR at 811). In essence, Plaintiff argues that the ALJ's "conservative treatment" finding is inconsistent with, and unsupported by, the record. ECF No. 11 at 4.

When the medical record contains contradictions, the ALJ "'is the final arbiter with respect to resolving ambiguities in the medical evidence.'" *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir.

2008)). Here, the ALJ cited specific medical records to underpin his finding that NP Quilalang's opinion is unpersuasive. AR 25-26. The ALJ emphasized that NP Quilalang did not fully review Plaintiff's medical record and that her findings were inconsistent with Dr. Khan and Dr. Lee's prior administrative findings. AR at 25; *see Tonapetyan*, 242 F.3d at 1149. The ALJ highlighted that neurosurgeon Dr. Nguyen, who reviewed Plaintiff's MRI imagining and consulted with Plaintiff, "did not see any strong indication of any recommended surgery." AR at 26 (citing AR at 536). The ALJ noted that Dr. Osorio himself suggested that Plaintiff pursue conservative management and continue to optimize his weight because Plaintiff's obesity can have long-term implications on his spine. AR at 24 (citing AR at 803). The ALJ also cited specific medical records instructing Plaintiff to perform low impact exercises and stretching. AR at 25 (citing AR at 357). Thus, the ALJ sought to provide an explanation supported by substantial evidence that NP Quilalang's opinion is both unsupported by and inconsistent with the medical record. *See Woods*, 32 F.4th at 792.

Yet, reviewing courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (citations and internal quotation marks omitted). The ALJ noted that Plaintiff received trigger point injections for pain management in 2023 and 2024. AR at 23 (citing AR at 549-593). "Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment." *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) (collecting cases). The ALJ did not articulate how Plaintiff's multiple spinal injections are not conservative treatment but instead cited the injections as an example of conservative treatment. *See* AR at 23, 25. However, the Ninth Circuit has deemed "legal errors harmless where it was clear they did not alter the ALJ's decision." *Molina*, 674 F.3d at 1115. Here, the ALJ's error was harmless because "inconsequential to the ultimate nondisability determination.'" *Molina*,

674 F.3d at 1115 (quoting *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

An ALJ "'need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Stiffler*, 102 F.4th at 1107 (quoting *Ford*, 950 F.3d at 1154). Similarly, an ALJ is permitted to reject "check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111 (alteration in original) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

The ALJ found that NP Quilalang's assessment of Plaintiff "is a check list type [] without reference to any specific evidence to support the assessments given." AR at 25. Although NP Quilalang's history of treating Plaintiff is relevant, NP Quilalang did not describe how said history led her to find that Plaintiff had upper extremity limitations. AR at 799; *see Woods*, 32 F.4th at 792. Nor did NP Quilalang identify any evidence in Plaintiff's medical records to support a finding that Plaintiff had upper extremity limitations. AR at 799; *see Molina*, 674 F.3d at 1111. The ALJ also found NP Quilalang's signed an in-home supportive services form not persuasive where it was not supported by and consistent with the record. AR at 25. The ALJ discounted NP Quilalang's in-home support services form on the ground that "[t]he assessment provides no specific reference to tests, findings or any other evidence to support the opinion." AR at 25. The ALJ noted that the form was "made for the purposes of receiving in-home supportive services and not for social security purposes." *Id*. Accordingly, the Court finds that the ALJ's permissibly discounted NP Quilalang's medical assessment and in-home support services form.

**C. The ALJ Legitimately relied on the VE's testimony.**

Plaintiff further argues that the VE's testimony that does not address Plaintiff's upper extremity limitations, has no evidentiary value. ECF No. 11 at 3. ALJ's often call upon VE's to testify about what jobs a hypothetical person with specified limitations may perform. *Leach v. Kijakazi*, 70 F.4th 1251, 1254 (9th Cir. 2023). "If the ALJ reaches the

final step of the five-step process, the ALJ may rely—as the ALJ did here—on the [VE]'s testimony." *Id*. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.1991)). In such a case "the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citation omitted). "A different standard applies when the ALJ's question to a vocational expert accurately describes the claimant's limitations. In that circumstance, an ALJ ordinarily may rely on the expert's testimony." *Leach*, 70 F.4th at 1255 (underline omitted) (citing *White v. Kijakazi*, 44 F.4th 828, 833-34 (9th Cir. 2022)).

Here, the VE testified that an individual with numerous specific limitations, who shares the claimant's age, education, and lack of work history, could work as a garment folder, assembler of electrical accessories, and a production assembler. AR at 92-93. The VE then testified that if the hypothetical individual also had upper extremity limitations, then there would be no jobs in the national economy for the individual to perform. AR at 93-94. Plaintiff notes that the ALJ's upper extremity limitation hypothetical corresponds to Dr. Sial and NP Quilalang's findings. ECF No. 11 at 5. The ALJ was unpersuaded by Dr. Sial and NP Quilalang's assessments. AR at 25. So, the ALJ did not rely on the VE testimony discussing upper extremity limitations in making his step five determination. AR at 25-27. At step five, the ALJ "'is [still] responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Because the Court finds that the ALJ permissibly discounted Dr. Sial and NP Quilalang's upper extremity limitation determinations, the ALJ was permitted to disregard analogous portions of the VE's testimony in making the step five determination. *See Leach*, 70 F.4th at 1254-55. Consequently, the Court finds that the ALJ's step five determination is supported by substantial evidence and contains no legal error.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision was not legally erroneous and that his determination that Plaintiff is not disabled was supported by substantial evidence. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: September 29, 2026.

Hon. Brian J. White
United States Magistrate Judge